IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | | |
|---|---|---|
| ADAM SEVY, | ) | |
| on behalf of himself | ) | |
| and others similarly situated; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| CITGO PETROLEUM CORPORATION | ) | |
| | ) | |
| Serve Registered Agent: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th St, Ste. C | ) | |
| Topeka, KS  66603 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ORSCHELN FARM AND HOME, LLC | ) | **JURY TRIAL DEMANDED** |
| d/b/a ORSCHELN FARM AND HOME | ) | |
| | ) | |
| Serve Registered Agent: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th St, Ste. C | ) | |
| Topeka, KS  66603 | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, on behalf of himself and all others similarly situated, and for his

Class Action Complaint states and alleges as follows:

## INTRODUCTION

1.      For years, Defendants Orscheln Farm and Home ("Orscheln"), LLC and Citgo

Petroleum Corporation ("Citgo") have deceptively and misleadingly labeled, marketed and sold

tractor hydraulic fluid as "303" fluid that meets certain manufacturer specifications when, in fact,

the "303" designation is obsolete and 303 specifications have not been available for over forty (40)

1

years.  Defendants have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in tractor hydraulic fluid.

2.     Tractor Hydraulic Fluid ("THF") is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.  It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment.  In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

3.     Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.   Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.

4.     After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including J14B, J20A and J20B.  Many other manufacturers created and sold fluids that purported to be similar.  The J14B specification became obsolete in the late 1970s.  During the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace.  The Quatrol program required blenders

and sellers of competing THF products to submit test data to Deere prior to the use of the J20A specification on their product labels, to ensure the products met the advertised specifications.

5.      In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. Today, John Deere manufactures and sells THF meeting a specification called J20C or J20D (low viscosity).  The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products which they contend meet the J20C specification in order to compete with John Deere.  The following timeline illustrates the history of 303 THF:



6.      John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

7.    Defendants deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.  Because there is no known "303" specification, there is no way for manufacturers, sellers, or anyone else to truthfully claim the products meets or is in compliance with any such specification.

8.    Nonetheless, Defendants promote these 303 THF products as a lower cost alternative, and offer them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers' specifications, have effective lubricant and anti-wear additives and properties, and are safe for use in purchasers' equipment.  The THF fluids are often sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendants and other sellers seek to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.  Defendants' Premium 303 Tractor Hydraulic and Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid are two such products.

9.    In addition to deceptively promoting a designation that is obsolete, manufacturers use poor quality base oils, waste oil, line flush, used motor oil and diluted additive packages in their 303 THF products in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of additive packages, the 303 THF fluids not only lack the required lubricant and protective benefits offered to purchasers, the fluids actually cause purchasers' equipment to suffer increased wear and damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, the 303

4

THF is labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.    In November 2017, because of the deceptive nature of the 303 THF products, the failures of the products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants from offering "303" THF products for sale in Missouri. The states of Georgia and North Carolina followed the action taken by Missouri and have banned the sale of 303 fluids as well.  Despite these bans and Defendants' knowledge of the problems with the 303 THF Products, Defendants continued to sell the products in the state of Kansas for a period of time.

11.    For years, Defendants' conduct harmed consumers like Plaintiff, who purchased "303" tractor hydraulic fluid products, more specifically Premium 303 Tractor Hydraulic and Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid (together referred to as "303 THF Products"), that were offered and sold as acceptable tractor hydraulic fluids that meet certain manufacturer specifications, as fluids that are safe for use in farm, construction and logging equipment, and as having certain characteristics and qualities that protect equipment from wear and damage.

12.    In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiff and other purchasers received a 303 THF Product that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.  These products therefore caused consumers' equipment damage and harm, increased wear, and caused

consumers to overpay for a product that was worthless and/or worth much less than the sale price. Like many other consumers throughout the state of Kansas, Plaintiff Adam Sevy purchased Defendants' 303 THF Products and suffered damage as a result.

## PARTIES

13.     Plaintiff Adam Sevy is a citizen and resident of Cass County, Missouri.

14.     Defendant Orscheln Farm and Home, LLC (Orscheln) is a for-profit limited liability company authorized to do business in the state of Kansas and with its principal place of business in Moberly, Missouri.   Defendant Orscheln has advertised and sold its products throughout the state of Kansas at its Orscheln Farm and Home retail stores.

15.     Defendant Citgo Petroleum Company (Citgo) is a for-profit company authorized to do business in the state of Kansas with its principal place of business in Houston, Texas.  Defendant Citgo Petroleum has advertised and sold its products, including its Premium 303 Tractor Hydraulic & Transmission Fluid and its Mile Master 303 Tractor Hydraulic Fluid throughout the state of Kansas, including at Orscheln Farm and Home retail stores.

## JURISDICTION AND VENUE

16. This action is filed in United States District Court for the District of Kansas, which is an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in Kansas and elsewhere.

17.     The United States District Court of Kansas has personal jurisdiction over Defendants because Defendants transact business in Kansas, through their various advertising methods and product sales directed toward Kansas residents.   Additionally, Plaintiff Sevy purchased the products at issue in Kansas.

18.    Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

19.    Defendant Orscheln is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores throughout the state of Kansas.

20.    Defendant Citgo is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores throughout the state of Kansas.

21.    During some or all of the time period from 2014 to the present, Defendant Orscheln sold, labeled, and advertised the 303 THF Products in yellow buckets called Premium 303 Tractor Hydraulic & Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid.

22.    During some or all of the time period from 2014 to the present, Defendant Citgo manufactured, labeled, and advertised the Premium 303 Tractor Hydraulic & Transmission Fluid ("Premium 303") and Mile Master 303 Tractor Hydraulic Fluid ("MileMaster 303") sold by Orscheln, Family Center, and other retailers.

### Defendants' Deceptive Labeling, Marketing and Advertising

23.    During some or all of the time period from 2014 to the present, Defendants offered the 303 THF Products for sale at stores all over Kansas as a product that provided certain performance benefits and met or had equivalency to a wide number of manufacturers' specifications.  The average sale price for a five (5) gallon bucket of Defendants' THF Products was $25.00.

24.    Defendants falsely and deceptively labeled, marketed and offered for sale the Premium 303 and the Mile Master 303 (1) as universal lubricants for farm logging and construction equipment; (2) as meeting specifications and being acceptable for use as hydraulic fluid,

7

transmission fluid, and gear oil in older and newer tractors and other equipment; (3) as substitutes for and satisfying John Deere's JD-303 specifications; (4) as fluids specifically formulated with base oils and additives designed to help protect against wear, rust, corrosion and foaming; and (5) as  fluids meeting certain John Deere and other OEM specifications and/or that may be used as a replacement fluid in equipment made by Allis-Chalmers, Massey, Ferguson, White, Allison, Case, International Harvester, Kubota, John Deere, New Holland, Ford and Caterpillar.

    25.    Defendants' labeling, marketing, advertising and sale of the 303 THF Products has been widespread, continuous and contained on various signs, labels and advertisements throughout the state of Kansas for years.  Representative examples of Defendants' labeling, marketing and advertising materials are set forth below.

    26.    Mile Master 303 was specifically labeled and advertised as follows:



**MileMaster®** *PRODUCT INFORMATION*    Date 10/13

**MileMaster 303 Tractor Hydraulic Fluid**

**DESCRIPTION:**
MileMaster 303 Tractor Hydraulic Fluid is a tractor hydraulic/transmission fluid for farm tractors, logging and construction equipment where transmission, final drive, hydraulics and wet brakes use a common fluid.

**QUALITIES:**
MileMaster 303 Tractor Hydraulic Fluid is a general purpose multi-grade tractor lubricant for farm, construction and logging equipment. It is specifically formulated with base oils and additives designed to help protect against wear, rust, corrosion and foaming. It may be used as a replacement fluid in select models where 303 fluid (mid-1970 model years and prior) is acceptable.

**APPLICATIONS:**
MileMaster 303 Tractor Hydraulic Fluid may be used as a replacement fluid in select models where 303 fluid is acceptable, including:

| | |
|---|---|
| Allis-Chalmers | International Harvester |
| Massey | Kubota |
| Ferguson | John Deere |
| White | New Holland |
| Allison | Ford |
| Case | Caterpillar |

Not recommended for modern equipment. Refer to owner's manual for recommended oil selection.

    27.    Premium 303 was specifically labeled and advertised as follows:



28.    These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites.

29.    By naming, labeling, marketing, advertising and selling the 303 THF Products in the foregoing manner, and by describing the products using words such as "303," "general purpose" and "universal," Defendants sought to create, and did create, an image of the 303 THF Products in the minds of Plaintiff and other consumers that would lead a reasonable consumer to conclude that Defendants' 303 THF Products were completely safe and effective for use in consumers' equipment and all equipment made by the listed manufacturers.

30.    Defendants' product name, labeling, advertising and marketing of their 303 THF Products was material to the reasonable consumer.

9

31.    At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding the 303 THF Products were false, deceptive and misleading to consumers seeking to purchase tractor hydraulic fluid.

32.    The John Deere "303" designation is over 50 years old and has been obsolete for many years.  Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use.  As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no known specifications for 303 fluid.   Defendants knew or should have known that at the time they were marketing and selling the 303 THF Products during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Products met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Products were in compliance with any known specifications.

33.    As Defendants knew, or should have known, the 303 THF Products manufactured and sold in the yellow buckets by Defendants lacked some or all of the additives required to provide the advertised "qualities" and benefits.

34.    As Defendants knew, or should have known, the 303 THF Products manufactured and sold in the yellow buckets by Defendants did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Products as tractor hydraulic fluids that met the specifications of all manufacturers listed on the label.

35.    At no point in time, on the label of the 303 THF products or otherwise, did Defendants tell purchasers the truth, including that:

    a.    The "303" designation is obsolete, an essential ingredient in the formula was banned in the 1970s, and there is no known 303 specifications against which to test the fluids offered for sale;

    b.    Defendants used lower-quality base oil and other ingredients not suitable for use in a tractor hydraulic fluid in the 303 THF Products;

    c.    The 303 THF Products contained a "down-treated" additive package;

    d.    Defendants' test data did not confirm that all of the 303 THF Products met all manufacturers' specifications;

    e.    Defendants had no idea whether all of the 303 THF Products it offered for sale met the requirements of, had acceptable anti-wear properties, or was suitable for use in tractors or other equipment; and

    f.    Use of the 303 THF Products would cause damage to purchasers' equipment, such as damage to the spiral gear in the drive, excessive wear, seal leakage, high pump leakage, and damage from deposits, sludging, and thickening.

36.    Instead, the 303 THF Products were deceptively offered for sale as fluids containing quality base oils, sufficient additives, and meeting the obsolete and now unavailable "303" specification.

**The State of Missouri's Testing of 303 THF**

37.    Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the

11

damage the fluids can do to tractors and other equipment.  The Missouri Department of Agriculture (MDA) is one such entity.

38.    In the summer of 2017, the Missouri Department of Agriculture sampled fourteen (14) different 303 THF products, many of which claimed to work in almost every tractor. Defendants' 303 THF Products were purchased in Missouri by the MDA in 2017 and were two of the products tested.

39.    The MDA tested the fluids' viscosity pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

40.    As a result of the testing, the MDA concluded that all fourteen (14) of these 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

41.    Defendants' Premium 303 and Mile Master 303 were two of the fluids that failed to meet current specifications.

42.    Defendants' THF Products were also found to have additive levels of calcium, phosphorous and zinc that were well below the additive levels found in fluids meeting the J20C specification.

43.    After its testing and research of the tractor hydraulic fluids, the MDA notified the retailers, including Defendant Orscheln, that the products were misbranded and violated Missouri's law prohibiting deceptive business practices (§ 413.115, RSMo.) because they failed to meet current tractor manufacturer's specifications.  The MDA's October 5, 2017 letter to Citgo with regard to the Mile Master 303 Tractor Hydraulic Fluid stated:

> The Missouri Department of Agriculture is responsible for insuring that all consumer commodities including motor oil, antifreeze, automatic transmission

fluid, or other automotive products sold or offered for sale in the state of Missouri meet the requirements of Missouri Revised Statute, Chapter 413 Weights and Measures and/or Missouri Code of State Regulation 2 CSR 90-22.140, Packaging and Labeling Requirements.

On April 21, 2017, the Division of Weights, Measures and Consumer Protection purchased and tested a sample of Mile Master 303 Tractor Hydraulic Fluid. This product claims to meet John Deer 303 specifications. John Deere 303 was discontinued and was subsequently replaced with the current JDM-J20C or D. Testing indicates your product does not meet Brookfield viscosity at -20C and -35C for John Deere J20C or pour point for J20D. This product is misbranded because the product did not meet the specification limits. Additionally, the reported performance additive content is lower than a typical J20C.

44.     The MDA's letter then referenced Missouri Revised Statue 413.115 and noted the sale of misbranded commodities constituted a crime of deceptive business practice. The MDA letter to Citgo then noted: **"You are hereby ordered to remove this product from sale until changes are made to correct the labeling or the product."**

45.     In an October 12, 2017 letter to Orscheln with regard to Mile Master 303, the MDA noted that "[t]ests indicate this is a misbranded product and does not comply with Missouri law RSMO Chapter 413." The MDA further wrote that Defendant Orscheln was "hereby ordered to remove this product from sale until changes are made to correct the labeling or the product itself."

46.     In an October 12, 2017 letter to Orscheln with regard to Premium 303, the MDA noted as follows:

> The Missouri Department of Agriculture is responsible for insuring that all consumer commodities including motor oil, antifreeze, automatic transmission fluid, or other automotive products sold or offered for sale in the state of Missouri meet the requirements of Missouri Revised Statute, Chapter 413 Weights and Measures and/or Missouri Code of State Regulation 2 CSR 90-22.140, Packaging and Labeling Requirements.

> On April 21, 2017, the Division of Weights, Measures and Consumer Protection purchased and tested a sample of Orscheln Premium 303 Tractor Hydraulic Fluid. This product claims to meet John Deer 303 specifications. John Deere 303 was discontinued and was subsequently replaced with the current JDM-J20C or D. Testing indicates your product does not meet

Brookfield viscosity at -20C and -35C for John Deere J20C or pour point for J20D. This product is misbranded because the product did not meet the specification limits. Additionally, the reported performance additive content is lower than a typical J20C.

47.     Thus, Premium 303 and Mile Master 303 were among the 303 THF products the Missouri Department of Agriculture tested and that failed to meet any current specifications and were likely to cause damage to equipment.

48.     In November and December of 2017, Orscheln provided the following "Advertising Correction Notice:"

Unfortunately we have just been informed by the Department of Agriculture State of Missouri that any 303 Tractor Hydraulic & Transmission Fluid must be pulled from our inventory and cannot be sold. Please accept our apologies for any inconvenience.

Due to this action by the Department of Agriculture State of Missouri, Orscheln Farm & Home is issuing an advertisement correction notice for the flyers listed below featuring a 303 Tractor Hydraulic & Transmission Fluid. All 303 Tractor Hydraulic & Transmission Fluid is no longer in stock in Missouri.

**Plaintif's Experience with Defendants' Labeling, Advertising and Products**

49.     In the five-year period prior to the original filing of this Class Action, Plaintiff purchased Defendants' 303 THF Products on numerous occasions.

50.     As with all Members of the Class, in the five-year period prior to the original filing of this Class Action, Plaintiff purchased Defendants' 303 THF Products containing the label representations set forth above.

51.     Plaintiff Adam Sevy purchased and used Orscheln Premium 303 and Milemaster 303 at the Orscheln's store located in Louisburg, Kansas.

52.     These 303 THF Products were used by Plaintiff Sevy in his Ford 4000 Tractor, Allis 940 wheel loader, John Deere 240 Skid Steer, Ford L8000 dump truck, and hydraulic concrete buggy.

53.     As a result of Defendants' manufacturing and offering the 303 THF Products for sale in Kansas, Plaintiff purchased a tractor hydraulic fluid that was (falsely and deceptively) offered for sale as a "303" fluid that contained quality base oils and additives, met required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and exposed equipment to increased wear and damage.

54.     Plaintiff reasonably relied on Defendants' representation that each fluid was a "303" fluid and on Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

55.     All reasonable consumers would consider Defendants' 303 THF Products to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Products were of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Products would cause all equipment to suffer increased wear and damage.

56.     A reasonable consumer would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid.  As a result of using Defendants' 303 THF Products, Plaintiff and Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Product was different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF

Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and (f) suffered damage to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to spiral gear damage, improper and poor shifting, wear and damage to wet brakes, high pump leakage, and damage from deposits, sludging and thickening.

57.     When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiff and Class Members their 303 THF Products, Defendants knew or should have known that product (1) did not meet manufacturer specifications and was not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) was not an adequate substitute for and did not satisfy John Deere's JD-303 specifications and/or designation; (3) was not adequate to provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) was not adequate to protect against rust and corrosion; (5) contained ingredients not suitable for use in tractor hydraulic fluid; and (6) was not appropriate for use in equipment of manufacturers where a product of its quality is recommended, including Allis-Chalmers, Massey, Ferguson, White, Allison, Case, International Harvester, Kubota, John Deere, New Holland, Ford and Caterpillar.

58.     Plaintiff used the 303 THF Products in the manner in which Defendants advised it could and should be used.

59.     As a result of Defendants' 303 THF Products not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated the Kansas Consumer Protection Act, breached express and implied warranties, fraudulently or negligently induced Plaintiff and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

60.     Defendants' manufacture, labeling, and sale of their 303 THF Products was deceptive and misleading in at least the following respects:

a.   Defendants' use of John Deere's "303" designation in the name of the product is deceptive and misleading.  The 303 THF Products are not John Deere products, do not use John Deere 303's formula and cannot meet the specifications for John Deere 303.  Defendants packaged their 303 THF Products in the yellow bucket, and used and traded on the John Deere name, so as to further deceive and mislead and create impression that the 303 THF Product was a legitimate tractor hydraulic fluid that met the specifications for John Deere 303 and other John Deere equipment.

b.   Defendants placed a deceptive and misleading statement on the product label by claiming that John Deere 303 is one of the specifications which the 303 THF Products meet.

c.   Defendants placed a deceptive and misleading statement on the Mile Master 303 Tractor Hydraulic Fluid product label by listing other manufacturers as those for which that product meets specifications, without specifying the equipment/specifications purportedly met for each of those manufacturers or exactly where the product is "recommended."

d.   Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels of the 303 THF Products.

e.   Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Products

17

purportedly may be used, when in reality the product does not meet many of the specifications for the listed manufacturers' modern or older model equipment.

f.  Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product is "designed to be a universal lubricant for farm, logging and construction equipment."

g.  Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product is "manufactured from base oils selected for their purity and thermal stability."

h.   Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product "contains a premium additive package to provide wear protection and anti-oxidant properties. . . ."

i.  Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product "contains extreme pressure additives to protect gears and working parts of pumps and hydraulic equipment."

j.  Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product provide "excellent water separation and anti-foaming characteristics."

k.  Defendants made a deceptive and misleading statement on the product label in their representation that the Mile Master 303 THF product is "a general purpose, multi-grade lubricant for farm, construction and logging equipment."

l. Defendants made a deceptive and misleading statement on the product label when claiming that the Mile Master 303 THF product is "specifically formulated with base oils and additives designed to help protect against wear, rust, corrosion, and foaming."

61.     The conduct listed in paragraph 60(a)-(l) constitutes deceptive and unconscionable business practices in violation of consumer protection laws.

62.     This action is brought by Plaintiff against Defendants to recover all money paid by Plaintiff and Class Members to Defendants for purchase of their 303 THF Products which were labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiff and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the following Class of similarly situated persons:

> All persons and other entities who purchased Orscheln Premium 303 Tractor Hydraulic & Transmission Fluid and/or MileMaster 303 Tractor Hydraulic Fluid in Kansas at any point in time from May 24, 2014 to present, excluding those who purchased for resale.

64.     Also excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

65.     The 303 THF Products at issue were sold across Kansas through retailers.  The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

66. The proposed Class is so numerous that joinder of all Class Members is impracticable. Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members of the Class.

67. There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

   a. Whether Defendants' 303 THF Products were being labeled, advertised and marketed as alleged in paragraphs 7-9, 11, 23-36, 53-57, and 59-60, above;

   b. Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

   c. Whether Defendants' 303 THF Products in actuality were as alleged in paragraphs 12, 33-47, 53-57, and 59-60, above;

   d. The components and qualities of Defendants' 303 THF Products, and the cost to Defendants to manufacture, distribute, market and sell their THF Products;

   e. Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Products was deceptive, unfair, and/or dishonest as alleged in paragraphs 7-9, 11, 23-36, 53-57, and 59-60;

   f. Whether Defendants breached the express warranties provided with regard to the 303 THF Products;

   g. Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Products;

   h. Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Products;

   i. Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the obsolete nature of the product and the specifications the product claimed to meet;

j.   Whether Defendants' representations regarding their 303 THF Products were false and made knowingly by Defendants, and were therefore deceptions, frauds, false pretenses, false promises, and/or misrepresentations as described in 407.020 RSMo and a violation thereof;

k.   Whether Defendants' representations were false and made negligently by Defendants, and were therefore deceptions, frauds, false pretenses, false promises, and/or misrepresentations as described in 407.020 RSMo and a violation thereof;

l.   Whether use of the 303 THF Products caused and/or exposed equipment to damage;

m.   Whether Defendants were unjustly enriched; and,

n.   Whether Defendants were negligent.

68.   The representative Plaintiff's claims are typical of those in the putative Class because he purchased Defendants' 303 THF Products and was similarly treated.

69.   Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of other Members of the Class. The interests of the other Class Members will be fairly and adequately protected by Plaintiff and counsel, who have extensive experience prosecuting complex litigation and class actions.

70.   A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action. In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

71.     A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

72.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiff.  All Class Members who purchased Defendants' products were treated similarly.  Thus, all Class Members have the same legal right and interest in relief for damages associated with the violations enumerated herein.

73.     Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

74.     Plaintiff asserts in Counts I through VIII, below, the following claims on behalf of themselves and the Class:

- Count I – Negligence
- Count II – Breach of Express Warranty
- Count III – Breach of Implied Warranty of Merchantability
- Count IV – Breach of Implied Warranty of Fitness for Particular Purpose
- Count V – Unjust Enrichment
- Count VI – Fraud/Misrepresentation
- Count VII – Negligent Misrepresentation
- Count VIII – Kansas Consumer Practices Act Violations

## COUNT I
### (Negligence)

75.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action

Complaint as if fully set forth herein.

76.    Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Products.

77.    Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

a.    Distributing and using misleading labeling information regarding the 303 THF Products qualities and OEM specifications met by product;

b.    Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Products and potential harm to equipment caused by use of the 303 THF Products in equipment for which it does not meet specifications;

c.    Failing to adequately ensure the 303 THF Products manufactured and sold met the advertised specifications;

d.    Failing to utilize adequate testing and other controls to ensure the 303 THF Products met the advertised specifications; and,

e.    Instituting and/or allowing careless and ineffective product manufacturing protocols.

78.    As a result of Defendants' negligence, Defendants' 303 THF Products had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

79.    Defendants' negligence caused or contributed to cause injuries and damages

to Plaintiff and the Class Members and caused Plaintiff's and the Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals,  exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening.  Defendants' negligence also caused or contributed to cause Plaintiff and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

80.    Plaintiff and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

81.    Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class Members, such that punitive damages are thus warranted.

## COUNT II
### (Breach of Express Warranty)

82.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

83.    Plaintiff and Class Members purchased Defendants' 303 THF Products.

84.    As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Products.

85.    The common statements Defendants made in the name and on the label of the 303 THF Products were made to induce Plaintiff and Class Members to purchase the 303 THF Products and/or were a material factor in inducing Plaintiff and Class Members to purchase the 303 THF Products, and therefore became part of the basis of the benefit of the bargain and an express warranty.

86.     As set forth above, the THF 303 Products did not conform to the statements of Defendants.  As a result, Plaintiff and the Class Members did not receive goods as warranted by Defendants.

87.     Defendants have received from Plaintiff timely notification of the defects in their THF 303 Products.

88.     The failure of the THF 303 Products to conform to the statements of Defendants has caused injury and damage to Plaintiff and Class Members.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

89.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

90.     Defendants directly or indirectly sold the 303 THF Products to Plaintiff and Class Members for use as described above.

91.     As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their ordinary use and the use described by Defendants.

92.     Plaintiff and Class Members used the 303 THF Products for their ordinary purpose and the use described by Defendants.

93.     Defendants have received from Plaintiff timely notification of the defect in their 303 THF Products.

94.     The failure of the 303 THF Products to be fit for their ordinary purpose has cause injury and damage to Plaintiff and Class Members.

## COUNT IV
### (Breach of Implied Warranty of Fitness for Particular Purpose)

95.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action

Complaint as if fully set forth herein.

96.  Defendants directly or indirectly sold the 303 THF Products to Plaintiff and Class Members for use as described above.

97.    As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their particular purpose for use as universal hydraulic fluid for tractors and/or other equipment.

98.    Defendants knew or should have known of the uses for which the 303 THF Products were purchased.

99.    Plaintiff and Class Members reasonably relied upon Defendants' judgment that the 303 THF Products were fit for use as universal hydraulic fluid for tractors and/or other equipment.

100.    Defendants have received from Plaintiff timely notification of the defects in their 303 THF Products.

101.    The failure of the 303 THF Products to be fit for their particular purpose has caused injury and damage to Plaintiff and Class Members.

## COUNT V
**(Unjust Enrichment)**

102.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

103.    As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Products, Plaintiff and the Class Members purchased Defendants' 303 THF Products and conferred a benefit upon Defendants by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendants appreciated and accepted.

104.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Products.

105.    Defendants were enriched at the expense of Plaintiff and other Class Members through the payment of the purchase price for Defendants' 303 THF Products.

106.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

107.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the other Class Members, in light of the fact that the 303 THF Products purchased by Plaintiff and the other Members of the Class were not what Defendants represented them to be.  Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiff and the other Members of the Class for the monies paid to Defendants for the 303 THF Products.

108.    By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiff and Class Members.

## COUNT VI
### (Fraudulent Misrepresentation)

109.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

110.    Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be

used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

111.    Defendants' representations set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

112.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiff and other Class Members rely on such representations.

113.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

114.    Defendants' representations were material to the purchase of the 303 THF Products.

115.    Plaintiff and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

116.    Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Products constitutes fraud on Plaintiff and all Class Members.

117.    Plaintiff and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Products.

118.    As a direct and proximate result of Defendants' illegal conduct, Plaintiff and Class Members have suffered ascertainable losses of money and other damages.

119.    Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiff and other Class Members.

120.    Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT VII
### (Negligent Misrepresentation)

121.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

122.    Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

123.    Such representations were made by Defendants with the intent that Plaintiff and the Class Members rely on such representations in purchasing Defendants' 303 THF Products.

124.    Such representations were material to Plaintiff's and the Class Members' purchase of Defendants' 303 THF Products.

125.   Such representations were false.

126.   Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

127.   Plaintiff and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

128.   Plaintiff and Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the 303 THF Products.

129.   As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered ascertainable losses of money.

## COUNT VIII
### (Violations of Kansas Consumer Protection Act)

130.   Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

131.   The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions.

132.   Plaintiff and Class Members are "consumers" and "persons" for purposes of the KCPA, K.S.A. §50-624(b) and (i).

133.   Defendants are each a "supplier" as defined by K.S.A. § 50-624(l).

134.   The purchase of Defendants' 303 THF Products was and is a "consumer transaction" as defined by K.S.A. § 50-624(c).

135.   Under the KCPA, Defendants have a statutory duty to refrain from both "deceptive acts and practices" and "unconscionable acts and practices."

136.   Defendants engaged in deceptive and unconscionable acts and practices, including,

but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the state of Kansas and throughout the United States.

137.    Defendants' conduct set forth in paragraphs 7-9, 11, 23-36, 53-57, and 59-60 and elsewhere above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were deceptive, unconscionable, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity.

138.    Defendants' conduct set forth in paragraphs 7-9, 11, 23-36, 53-57, and 59-60 and elsewhere above, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also  deceptive and unconscionable in omitting or suppressing a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

139.    Defendants' conduct as set forth herein with regard to the marketing and sale of the 303 THF Products constitutes deceptive and unconscionable acts and practices.

140.    Defendants engaged in deceptive and unconscionable practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the 303 THF Products.

141.     Defendants falsely represented these facts, knowingly or with reason to know,

that the 303 THF Products had sponsorship, approval, accessories, characteristics, ingredients, uses, benefits, and/or quantities that it did not have, in violation of K.S.A. § 50-626(b)(1)(A).

142.    Defendants falsely represented, knowingly or with reason to know, that the 303 THF Products were of a particular standard, quality, grade, style and/or model when the products materially differed from that representation, in violation of K.S.A. § 50-626(b)(1)(D).

143.    Defendants willfully used in a written representation an exaggeration, falsehood, innuendo, and/or ambiguity as to a material fact, in violation of K.S.A. § 50-626(b)(2).

144.    Defendants willfully failed to state materials facts regarding their 303 THF Products and willfully concealed, suppressed, and omitted material facts, in violation of K.S.A. § 50-626(b)(3).

145.    Defendants engaged in a pattern of conduct toward Plaintiff and all Class Members that, when taken in its totality, is and was deceptive, in violation of K.S.A. § 50-626(a).

146.    Defendants engaged in a pattern of conduct toward Plaintiff and all Class Members that, when taken in its totality, is and was unconscionable, in violation of K.S.A. § 50-627(a).

147.    Defendants' conduct with regard to their 303 THF Products was materially deceptive and unconscionable, and was a proximate cause of economic damage to purchasers.

148.    Plaintiff and Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

149.    As a direct and proximate result of Defendants' illegal conduct, Plaintiff and Class Members have suffered ascertainable losses of money.

150.    Defendants' conduct as described herein was intentional, done knowingly, and was in conscious disregard of the rights of Plaintiff and other Class Members.

151.   Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

WHEREFORE, Plaintiff, on behalf of himself and the Class described in this Class Action Complaint, respectfully requests that:

A.   The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiff and counsel to be an adequate representative thereof;

B.   The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiff and the other Members of the Class;

C.   The Court enter an Order awarding Plaintiff, individually and on behalf of the other Members of the Class, the expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D.   The Court enter an Order awarding to Plaintiff, individually and on behalf of other Members of the Class, pre-and post-judgment interest, to the extent allowable; and,

E.    For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members hereby demand a jury trial on all issues of fact and damages in this action.##

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs and Class Members hereby designate the United States District Court for the District of Kansas at Kansas City as the place of trial.                    #

33

Date:  May 24, 2019                     Respectfully submitted,


                                        WHITE, GRAHAM, BUCKLEY,
                                        & CARR, L.L.C

                                        BY:_____/s/ *Bryan White*_____
                                              William Carr.  KS Bar #16301
                                              Bryan T. White KS Bar #23255
                                              19049 East Valley View Parkway
                                              Independence, Missouri 64055
                                              (816) 373-9080 Fax: (816) 373-9319
                                              bcarr@wagblaw.com
                                              bwhite@wagblaw.com

                                              -and-

                                        HORN AYLWARD & BANDY, LLC

                                        BY:___*/s/ Thomas V. Bender*_____
                                              Thomas V. Bender, KS Bar #22860
                                              Dirk Hubbard, KS Bar #15130
                                              2600 Grand, Ste. 1100
                                              Kansas City, MO 64108
                                              (816) 421-0700
                                              (816) 421-0899 (Fax)
                                              tbender@hab-law.com
                                              dhubbard@hab-law.com

                                        **ATTORNEYS FOR PLAINTIFFS
                                        AND CLASS MEMBERS**